# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| EPIC COMPANIES, LLC, | § | Case No. 19-34752 (DRJ) |
|  | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § |  |
| JEFFREY T. VARSALONE, | § |  |
| LIQUIDATING TRUSTEE, | § |  |
|     Plaintiff. | § |  |
|  | § | Adv. No. 21-03893 |
| vs. | § |  |
|  | § |  |
| CENTRAL BOAT RENTALS, INC., | § |  |
|     Defendant. | § |  |

## LIQUIDATING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty days from the date this motion was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

**To the Honorable David R. Jones,**
**United States Bankruptcy Judge:**

       Jeffrey T. Varsalone, as the Liquidating Trustee for the Epic Companies, LLC Trust (the

"Liquidating Trustee," or the "Plaintiff"), by his undersigned counsel and pursuant to Rule 56 of

the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this matter by Rule

7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The mailing address for the Debtors is: P.O. Box 79625, Houston, Texas 77279-9625.

13810963

of the United States Bankruptcy Court for the Southern District of Texas, hereby files this Motion for Summary Judgment (the "Motion") against Central Boat Rentals, Inc. (the "Defendant," or "Central Boat").

**I.      Summary**

1.      The Liquidating Trustee requests summary judgment against the Defendant in the amount of $76,284.57 plus pre- and post-judgment interest, pursuant to sections 547 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and other applicable law. There is no genuine dispute that Epic Companies, LLC ("Epic") made the payment in question to Central Boat within 90 days of the Petition Date (as defined below) on account of antecedent debts while Epic was insolvent and that this allowed the Defendant to receive more than it would have received in a hypothetical Chapter 7 Case.

2.      In its Answer (as defined below) Central Boat asserted the following affirmative defenses: (1) the Transfer (as defined below) was made in the ordinary course of business or financial affairs of the Debtors and the Defendant; (2) the Debtors received subsequent new value from the Defendant after the Transfer; (3) the Transfer was intended to be a contemporaneous exchange for new value; (4) the Transfer was not made for or on account of antecedent debt owed by the Debtors on or before such Transfer was made; (5) the Defendant was the holder of liens against property of the estate; (6) the Transfer avoided the fixing of a statutory lien that is not avoidable under section 545 of the Bankruptcy Code; (7) the Liquidating Trustee did not analyze reasonably known affirmative defenses before filing the Complaint (as defined below); and (8) the Defendant is entitled to setoff and/or recoupment.

3.      The affirmative defenses fail because (1) the Transfer was made pursuant to a Settlement Agreement and thus not in the ordinary course of business or financial affairs of Epic

13810963

and the Defendant; (2) the Defendant did not provide any additional services to Epic after the Transfer; (3) there was no exchange of value from the Defendant in exchange for the Transfer because the Settlement Agreement only included an assignment of claims and a release from the Defendant upon the completion of all of the payments contemplated under the Settlement Agreement, which never occurred; (4) the Transfer was made pursuant to the antecedent debt owed by Epic under the Settlement Agreement; (5) to the extent the Defendant held any valid liens, they were not against property of Epic's estate; (6) similarly, the Defendant did not hold a lien that was unavoidable under section 545 of the Bankruptcy Code; (7) the Defendant is not entitled to any affirmative defenses and the Liquidating Trustee analyzed the affirmative defenses prior to filing the Complaint; and (8) there is no basis for the Defendant to assert a right of setoff or recoupment.

4.       In support of this Motion, the Liquidating Trustee relies on the following evidence:

- **Exhibit A** – Declaration of Jeffrey T. Varsalone in Support of the Liquidating Trustee's Motion for Summary Judgment (the "Varsalone Declaration");

- **Exhibit B** – Settlement and Mutual Release Agreement by and among Central Boat, Ranger Offshore, Inc., and Epic dated as of May 6, 2019 (the "Settlement Agreement");

- **Exhibit C** – Central Boat's Proof of Claim No. 10092 [Case No. 19-34752];

- **Exhibit D** – Verified Complaint, Case No. 2:19-cv-00173-RDP, *Central Boat Rentals, Inc. v. Ranger Offshore, Inc. and Epic Companies LLC* in the U.S. District Court for the Northern District of Alabama (the "Verified Complaint");

- **Exhibit E** – Epic's June 2019 Bank Statement ("Bank Statement"); and

- **Exhibit F** – Epic's Demand Letter to Central Boat dated as of October 30, 2020 (the "Demand Letter").

## II.   Jurisdiction

5.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Relief is sought pursuant to sections 502(d), 547, and 550 of the Bankruptcy Code, rules 3007(b), 7001,

and 7008 of the Bankruptcy Rules, and Bankruptcy Local Rule 7008-1. This adversary is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (O). Pursuant to Bankruptcy Rule 7008

and Bankruptcy Local Rule 7008-1, the Liquidating Trustee consents to the entry of final orders

or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot

enter final orders or judgment consistent with Article III of the United States Constitution. Venue

is proper in this district pursuant to 28 U.S.C. § 1409(a).

### III.   <u>Legal Standard</u>

6.      Federal Rule 56, as made applicable to this proceeding by Bankruptcy Rule 7056,

provides that summary judgment is proper when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). A material fact is one which might affect the outcome of the suit due to its legal

import. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists

when the evidence is such that a reasonable finder of fact could return a verdict for the non-movant.

*See id.*

7.      Under Federal Rule 56, the movant has the burden of identifying the basis for its

motion and those portions of the record that reveal that there is no genuine issue in dispute. See

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once the movant

meets its burden, the non-movant must come forward with specific facts showing a genuine

dispute. *See id.* at 586. The non-movant must do more than show that there is some "metaphysical

doubt as to material facts." *Id.*

8.      The following facts and analysis demonstrate that no genuine issue of material fact

exists and the Defendant cannot genuinely contest the facts required for the Liquidating Trustee to

13810963

prevail and the Defendant's affirmative defenses fail as a matter of law. Therefore, the Liquidating Trustee is entitled to judgment as a matter of law against the Defendant.

## IV.    **Undisputed Facts**

9.      Epic and certain of its affiliates and subsidiaries formed a full-service provider to the global decommissioning, installation and maintenance markets headquartered in Houston, Texas. Epic services included heavy lift, diving and marine, specialty cutting and well plugging and abandonment services. Ranger Offshore, Inc. ("Ranger") offers marine and subsea construction and support services. The Defendant, Central Boat, provided offshore vessel towing services to Epic and Ranger.

10.     In August 2018, Epic's affiliate acquired some of Ranger's assets and began leasing tugs and barges from Central Boat. A dispute arose between Central Boat, Ranger, and Epic regarding amounts owed by Ranger and Epic to Central Boat. *See* Settlement Agreement, ¶ 1.

11.     On January 30, 2019, Central Boat filed a Verified Complaint with Request for Issue of Process for Maritime Attachment and Garnishment against Ranger and Epic in Case No. 2:19-cv-00173-RDP, *Central Boat Rentals, Inc. v. Ranger Offshore, Inc. and Epic Companies LLC* in the U.S. District Court for the Northern District of Alabama (the "Lawsuit"). Central Boat alleged that Ranger and Epic failed to make payments to Central Boat under a Master Service Agreement dated February 17, 2010 and a Barge Bareboat Charter dated August 1, 2018 related to the MARMAC 26.

12.     On May 6, 2019, Epic, Ranger, and Central Boat entered into the Settlement Agreement, whereby Central Boat agreed to certain mutual releases and to dismiss the Lawsuit against Epic and Ranger in exchange for $120,825.29 and five monthly installment payments of $76,284.57 paid by Epic to Central Boat. Upon execution of the Settlement Agreement, Central

Boat released its claims against Epic and Ranger, except for claims relating to the payment of amounts under the Settlement Agreement. *See* Settlement Agreement, ¶¶ 3.3 and 3.6. Upon final payment of the monthly installment payments, Central Boat would assign to Epic its $508,563.78 claim against Ranger. However, Epic never made all of the monthly installment payments to Central Boat. *See* Settlement Agreement, ¶ 3.7.

13.      On June 21, 2019, within 90 days of the Petition Date, Central Boat received the following installment payment from Epic (the "<u>Transfer</u>"):

| DATE | PAYMENT TYPE | AMOUNT |
|---|---|---|
| 06/21/2019 | Electronic Payment | $76,284.57 |
| **Total** | | **$76,284.57** |

*See* Bank Statement, p. 6. The Transfer enabled the Defendant to receive more than it would have received in a Chapter 7 case because the Defendant did not have the ability to assert a lien on any of Epic's property as Epic and the other Debtors never owned the MARMAC 26. *See* Varsalone Declaration, ¶ 5.

14.      On August 26, 2019, (the "<u>Petition Date</u>"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Court</u>") [Case No. 19-34752, Docket No. 1].

15.      On October 23, 2019, Central Boat filed a proof of claim in the Chapter 11 Cases in the amount of $430,476.32 ("<u>Claim No. 10092</u>") for tug and related services allegedly secured by maritime liens. *See* Claim No. 10092.

16.      On April 7, 2020, the Court entered an order [Docket No. 681] (the "<u>Confirmation Order</u>") approving the Debtors' *Disclosure Statement for Joint Plan of Liquidation of Epic Companies, LLC and Its Debtors Subsidiaries under Chapter 11 of the Bankruptcy Code* [Docket

13810963

No. 582] on a final basis and confirming the *Joint Plan of Liquidation of Debtor Epic Companies, LLC* [Case No. 19-34752, Docket No. 581] (the "Plan"). The effective date of the Plan occurred on April 13, 2020.

17.     The Plan and Confirmation Order established the Liquidating Trust and appointed Jeffrey T. Varsalone as the Liquidating Trustee. The Debtors' assets were subsequently transferred to the Liquidating Trust. Pursuant to the Confirmation Order and the Plan, the Debtors contributed certain causes of action to the Liquidating Trust, and the Liquidating Trustee was authorized to pursue such causes of action. *See* Plan, Article V.H.

18.      On October 30, 2020 Epic sent a letter to Central Boat demanding the return of the Transfer payment received from Epic during the Preference Period within 30 days of receipt of the letter. *See* Epic's Demand Letter to Central Boat dated as of October 30, 2020 (the "Demand Letter").

19.     On August 25, 2021, the Liquidating Trustee filed the Complaint [Case No. 21-03893, Docket No. 1] (the "Complaint") against the Defendant seeking to avoid and recover $76,284.57 in payments it received from Epic pursuant to sections 547 and 550 of the Bankruptcy Code and pre-and post-judgment interest pursuant to applicable law.

**V.     Argument**

20.     In order to avoid the Transfer pursuant to section 547 of the Bankruptcy Code, the Liquidating Trustee must establish that the Transfer (1) was of an interest of Epic in property, (2) was to or for the benefit of Central Boat, (3) was for or on account of an antecedent debt owed by Epic before the Transfer was made, (4) was made while Epic was insolvent, (5) was made on or within 90 days before the Petition Date, and (6) enabled the Defendant to receive more than it would have received in a hypothetical Chapter 7 case if the Transfer had not been made.

13810963

### A.   Transfer of an Interest of Epic

21.     The Defendant admits that the Debtors made transfers of an interest of the Debtors'
property during the Preference Period in an amount of at least $76,284.57. *See Answer and
Affirmative Defenses of Central Boat Rentals, Inc.* [Case No. 21-03893, Docket No. 9] (the
"Answer"), ¶ 14. The Transfer was made by Epic from its account at Capital One Bank, account
ending 1093. *See* Bank Statement, p. 6. As Epic's June 2019 bank statement shows, a wire transfer
of $76,284.57 was made to the Defendant on June 21, 2019. *See* Bank Statement, p. 6; *see also*
Settlement Agreement, ¶ 3.1. Accordingly, the Transfer was of an interest of Epic in property.

### B.   To or for the Benefit of Central Boat on Account of an Antecedent Debt

22.     The Transfer was made to Central Boat as a creditor of Epic based on the Settlement
Agreement. In the Fifth Circuit, a legal claim—even one that is contingent or disputed—is an
"antecedent debt" under the Bankruptcy Code, so long as the claim arose before the transfer. *See
Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311 (5th Cir. 1996).
Payments to settle claims are payments on an antecedent debt because they resolve preexisting
claims. *See id.* at 317–19. Accordingly, the Transfer was made to or for the benefit of a creditor
and on account of an antecedent debt, which arose prior to the Transfer.

### C.   The Transfer was made while Epic was Insolvent within the 90 days prior to the Petition Date.

23.     As a matter of law, Epic is presumed to be insolvent in the 90 days prior to the
Petition Date and here the Defendant cannot present any evidence to rebut the presumption. *See*
11 U.S.C. § 547(f). Because Epic filed a voluntary Chapter 11 petition on August 26, 2019, the
90-day preference period ran from May 28, 2019 to August 26, 2019. The Transfer occurred on
June 21, 2019. Strangely, the Defendant claimed it lacked the information or knowledge to confirm
this allegation and denied that the Transfer occurred within 90 days of the Petition Date. *See*

8

Answer, ¶ 12. However, Epic's June 2019 bank statement shows that the Transfer occurred on June 21, 2019. *See* Bank Statement, p. 6. Accordingly, the Transfer was made while Epic was insolvent and within 90 days before the Petition Date.

### D. The Transfer enabled Central Boat to receive more than it would have received in a hypothetical Chapter 7 Case.

24.     If the Transfer had not been made to the Defendant, the Defendant would have been at best a general unsecured creditor of Epic. The Defendant filed a proof of claim in Epic's bankruptcy for a secured claim. *See* Claim No. 10092. However, the Defendant did not have a lien against property of the estate, and even if it had valid liens against Epic, they would have been effectively unsecured because Epic's assets were insufficient to pay off the debt of its senior secured lender.

25.     Central Boat's claim was reclassified as a general unsecured claim by order of the Court. *See Order Sustaining the Liquidating Trustee's Third Omnibus Objection to Certain Proofs of Claim* [Case No. 19-34752, Docket No. 1036]. Therefore, Central Boat cannot now claim secured status.

26.     General unsecured creditors will receive far less than 100% on their claims in the chapter 11 cases. *See* Varsalone Declaration, ¶ 4.

27.     Under section 550(a) of the Bankruptcy Code, the Liquidating Trustee can recover the value of the Transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. §550(a). The Defendant received the Transfer, which makes it the initial transferee. *See* Bank Statement, p. 6. Accordingly, the Liquidating Trustee has established that there are no material issues of fact regarding its ability to avoid and recover the Transfer.

13810963

### E.  Affirmative Defenses

28.     Central Boat pled several affirmative defenses for which there is no genuine issue of material of fact and all of which fail as a matter of law.

**1.  The Transfer was not in the ordinary course of business or financial affairs of Epic and Central Boat.**

29.     The payment was part of the Settlement Agreement related to the claims brought in the Defendant's Verified Complaint and is accordingly not in the ordinary course of business or financial affairs of Epic and the Defendant.

30.     Payments made pursuant to a settlement agreement do not fall under the ordinary course of business exception because they are neither the type of customary credit transaction nor part of the "normal financial relations" Congress enacted section 547(c) to protect. *In re Energy Coop.*, 832 F.2d 997, 1003–04 (7th Cir. 1987) (holding that payments made pursuant to a settlement agreement based upon a breach of contract claim were not made in the ordinary course of business).

31.     Courts have consistently held that payments made by a debtor to a creditor pursuant to a pre-petition settlement agreement are not protected by section 547(c)(2) of the Bankruptcy Code. *See In re Daikin Miami Overseas, Inc.*, 65 B.R. 396, 398 (S.D. Fla. 1986) (holding that "payments made pursuant to a settlement agreement, which appear to be the result of an antecedent debt and prior dispute between the parties, are simply not in the ordinary course of business"); *Am. Honda Fin. Corp. v. A. Angelle, Inc. (In re A. Angelle, Inc.)*, 230 B.R. 287, 299 (Bankr. W.D. La. 1998); *Williams v. Mckesson Corp. (In re Quality Infusion Care, Inc.)*, Case No. 10-36675, 2013 Bankr. LEXIS 5044, at *36–37 (Bankr. S.D. Tex. Nov. 25, 2013); *see also Hickey v. Nightingale Roofing, Inc.*, 83 B.R. 180, 185 (D. Mass. 1988) ("it appears appropriate to enforce a per se rule that litigation settlements are not to be treated under any circumstances as transfers either 'in the

ordinary course of business' or 'according to ordinary business terms'"). Therefore, the Transfer could not, as a matter of law, have been made in the ordinary course of business or financial affairs of the Epic and Central Boat.

**2.  Epic did not receive subsequent new value from the Defendant after the Transfer.**

32.     The Defendant did not provide Epic with any new value after the Transfer. The Transfer occurred on June 21, 2019, which was made pursuant to the Settlement Agreement, to settle claims against Epic for amounts allegedly owed for services provided by Central Boat. There is no evidence that the Defendant provided new value to Epic between June 21 and the Petition Date.

33.     "New value" is "[m]oney or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law . . . but it does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). Forbearance from exercising a pre-existing right is not "new value." *See Am Bank of Martin Cty. v. Leasing Serv. Corp. (In re Air Conditioning, Inc.)*, 845 F.2d 293, 298 (11th Cir. 1988) ("Forbearance from exercising pre-existing rights does not constitute new value under section 547(a)(2)"); *Ogle v. Advent, Inc. (In re HDD Rotary Sales, LLC)*, Case No. 11-38053, 2013 Bankr. LEXIS 1447, at *11–12 (Bankr. S.D. Tex. Apr. 1, 2013) (holding that the suspension of execution on a judgment and its recordation in exchange for a $50,000 payment was not "subsequent new value").

34.     There is no evidence that Central Boat provided any additional goods or services after June 21, 2019. Nor can Central Boat's assignment claims be considered new value because the assignment was only effective upon completion of all installment payments, which Epic never made.

11

**3. The Transfer was not intended to be a contemporaneous exchange for new value.**

35.    A contemporaneous new value defense requires showing that (1) the transfer conveyed new value to the debtor's estate or assets; (2) the payment was intended by the debtor and creditor to be a substantially contemporaneous exchange for new value; and (3) the exchange must be substantially contemporaneous. 11 U.S.C. § 547(c)(1); *see In re Arrow Air, Inc.*, 940 F.2d 1463, 1465 (11th Cir. 1991).

36.    First, the transfer did not convey new value to Epic because the Transfer was made for settlement of a pre-existing claim. Epic had no obligation to pay the debts of Ranger but acquired that obligation through the execution of the Settlement Agreement—providing no value to Epic.

37.    Second, no right to pursue a monetary claim against Ranger was ever assigned to Epic. Under the Settlement Agreement the right to pursue claims against Ranger would only assign to Epic upon the final payment. *See* Settlement Agreement, ¶ 3.7. Epic only made one of the monthly installment payments under the Settlement Agreement. As such, there was never an assignment of the right to claims against Ranger.

**4. The claims in the Complaint are based upon antecedent debt.**

38.    The settlement payments made by Epic were made on account of the debt that arose at the time when Epic executed the Settlement Agreement, if not sooner. *See In re Enron Corp.*, 357 B.R. 32, 45 (Bankr. S.D.N.Y. 2006) (finding that the debt, on account of which settlement payments were made, arose at the time of the actions giving rise to the settled claim).

39.    The very basis of the Lawsuit brought by Central Boat against Epic was an allegation that Epic owed a debt to Central Boat. In its Verified Complaint, Central Boat alleged that Epic was Ranger's successor for the purpose of payment of the amounts due to Central Boat.

13810963

*See* Verified Complaint, ¶ 2. Central Boat itself alleged that "Ranger's debts [were] also those of EPIC." Curiously, Central Boat now reverses its position and attempts to argue that the Transfer payment was *not* made on account of an antecedent debt.

40.     Even if there was no antecedent debt prior to the execution of the Settlement Agreement, courts consistently hold that settlement payments for the release of claims are made for and on account of antecedent debt. *In re Henninger*, 336 B.R. 733, 739 (Bankr. N.D. Tex. 2005) (settlement funds were made on account of antecedent debt); *In re Git-N-Go, Inc.*, No. 04-10509-R, 2007 WL 2816215, at *9 (Bankr. N.D. Okla. Sept. 25, 2007) (settlement payment was made on account of an antecedent debt); *Peltz v. New Age Consulting Servs.*, Inc., 279 B.R. 99, 105 (Bankr. D. Del. 2002) (transfer paid in settlement of cause of action was made on account of antecedent debt).

41.     This case is no different. The Transfer was made on account of an antecedent debt that at the latest arose when Epic entered into the Settlement Agreement. Central Boat cannot claim the best of both worlds. In the Verified Complaint it alleged that it was owed a debt, and it was paid for that debt. Therefore, Central Boat's defense that the settlement payment was not on account of antecedent debt fails as a matter of law.

**5.  Central Boat does not hold any liens against property of Epic's Estate.**

42.     First, the vessel Central Boat claims to have liens against in Claim No. 10092 are not owned by Epic. Therefore, Central Boat holds no liens against the *Debtor's* estate and thus Central Boat would not have valid lien rights against Epic in a hypothetical Chapter 7 liquidation. As a result, Central Boat would have a lower recovery in a hypothetical Chapter 7 case than it did as a result of the Transfer.

13810963

43.     The fact that Central Boat would not hold any secured claims against Epic is further supported by the reclassification of its claim in the bankruptcy cases to a general unsecured claim. *See Order Sustaining the Liquidating Trustee's Third Omnibus Objection to Certain Proofs of Claim* [Case No. 19-34752, Docket No. 1036]. By failing to object, Central Boat has conceded the unsecured status of its claims, which are based on the same Settlement Agreement that was the basis for the Transfer.

**6.    The Defense that the Transfer prevented the fixing of a statutory lien that is not voidable under 11 U.S.C. § 545 is inapplicable.**

44.     A lien is fixed when a creditor has perfected its security interest and "Fasten[s] liability" against the debtor's property. *In re Ramba, Inc.*, 416 F.3d 394, 400 (5th Cir. 2005). The fixing of a lien, is not so broad as to include any transfer made in satisfaction of a debt. *Id.* at 401. Epic did not prevent the fixing of a statutory lien because Central Boat did not have any lien rights against Epic at the time of the Transfer. To qualify for this defense the Defendant must have had a right to a statutory lien that would have attached to transferred property if the transfer had not been made. Central Boat did not have any liens against Epic's property because the vessels it claims to have liens against are not owned by Epic. The Transfer was not made to secure a debt that was secured by a statutory lien, therefore this defense in inapplicable to the claims at issue.

**7.    The Trustee conducted reasonable due diligence of the reasonably knowable affirmative defenses as required by § 547(b).**

45.     The Liquidating Trustee reviewed Epic's bank records, wire records and correspondence relating to the Transfer. The Liquidating Trustee also reviewed the Verified Complaint and the Settlement Agreement, and analyzed all the parties' relationships to the Complaint. The Trustee, through counsel, sent the Demand Letter to Central Boat requesting it

provide any affirmative defenses, but it did not assert any. The Defendant admits to having received the Demand Letter. *See* Answer, ¶ 16.  The Liquidating Trustee proceeded to perform its own evaluation of the reasonably knowable affirmative defenses to avoidance of the transfer. These actions are more than sufficient to meet the requirement of §547(b). *See Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC)*, No. 18-32414, 2020 WL 7501938 at *7 (Bankr. S.D. Tex. Dec. 21, 2020) (finding that the Trustee performed reasonable due diligence when he "reviewed Trailhead's bank and wire records, invoices relating to the Anixter Transfer, correspondence, and the contract between Targa and Trailhead."). In addition, as evidenced by this Motion, the Defendant does not have any available affirmative defenses. Thus, the Liquidating Trustee has conducted reasonable due diligence as required by section 547(b).

**8.   The Defendant is not entitled to setoff/recoupment.**

46.     Bankruptcy Code section 547(c) "provides the exclusive list of substantive affirmative defenses to a § 547(b) preference action." *Ogle v. Advent, Inc. (In re HDD Rotary Sales, LLC)*, 2012 Bankr. LEXIS 5903, at *11 (citing *In re Kmart Corp.*, 318 B.R. 409 (Bankr. N.D. Ill. 2004); *In re Sterling Die Casting Co.*, 118 B.R. 205 (Bankr. E.D.N.Y. 1990); *In re Candor Diamond Corp.*, 26 B.R. 850 (S.D.N.Y. 1983)). Therefore, the only non-547(c) affirmative defenses allowed are threshold or procedural defenses, but not those that touch on the merits of the transfers themselves.

47.     The defense of setoff/recoupment is not included in section 547(c) and under these circumstances there is no support for any claim of setoff or recoupment. Central Boat cannot genuinely contest the facts required for the Liquidating Trustee to prevail and all the Defendant's affirmative defenses fail as a matter of law. Therefore, Central Boat's eighth affirmative defense fails as a matter of law.

13810963

## VI.  **Prayer**

48.    Accordingly, the Liquidating Trustee requests that the Court enter a judgment: (i) avoiding the Transfer; and (ii) ordering the immediate return of all pre-petition payments to the Defendant in the amount of $76,284.57 plus (a) pre-judgment interest on the value the Transfer from the date of the Demand Letter through the date of judgment at the prevailing federal judgment rate pursuant to 28 U.S.C. § 1961 and (b) post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate.

**Dated:  March 7, 2023**

PORTER HEDGES LLP

By:  /s/ *Eric M. English*
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
Email: jhiggins@porterhedges.com
        eenglish@porterhedges.com
        sjohnson@porterhedges.com

**COUNSEL FOR THE PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 7, 2023, a copy of the foregoing document was served through the

Electronic Case Filing System to all parties appearing in these cases, and by first class mail and

electronic transmission to the party identified below:

Joseph P. Briggett
Lugenbuhl, Wheaton, Peck Rankin & Hubbard
601 Poydras St., Ste. 2775
New Orleans, Louisiana 70130
jbriggett@lawla.com

*Counsel for Defendant Central Boat Rentals, Inc.*

/s/ *Eric M. English*
Eric M. English

13810963