UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| EPIC COMPANIES, LLC, | Case No. 19-34752 (DRJ) |
| Debtors.[1] | (Jointly Administered) |
| JEFFREY T. VARSALONE, LIQUIDATING TRUSTEE, | |
| Plaintiff, | Adversary Proceeding |
| v. | Adv. No. 21-03893 |
| CENTRAL BOAT RENTALS, INC., | |
| Defendant. | |

**CENTRAL BOAT RENTALS' OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**

> **NOTICE PURSUANT TO LR 9013-1:**
> This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473); Epic Diving & Marine Services, LLC (2501); Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022).  The mailing address of the Debtors is:  P. O. Box 79625, Houston, TX  77279-9625.

1

Defendant, Central Boat Rentals, Inc., ("CBR" or "Defendant"), by its undersigned counsel, hereby files this Opposition to the Motion for Summary Judgment filed by the Plaintiff, Jeffrey T. Varsalone, as liquidating trustee for the Epic Companies, LLC Trust (the "Trustee" or "Plaintiff"), and files this Cross Motion for Summary Judgment seeking summary judgment in CBR's favor with regard to 11 U.S.C. § 547(b)(5), § 547(c)(1) (contemporaneous exchange for new value), and § 547(c)(2) (transfer in the ordinary course of business).

## I.  SUMMARY

The Trustee cannot prove all six elements of his preferential transfer claim, as CBR did not receive more than it would have received in a hypothetical Chapter 7 case had the June 21, 2019 transfer (the "Transfer") not been made. Furthermore, even if the Trustee could prove all six elements, the affirmative defenses raised by CBR bar the Trustee's claims. The Transfer was a contemporaneous exchange of new value, with the Settlement Agreement and Mutual Release (the "Agreement") evidencing the contemporaneous and ongoing exchanges that were intended with each payment. In exchange for certain payments, CBR not only released its Rule B attachment against Epic, but also assigned to Epic its claim against Ranger and agreed to cooperate with Epic in connection with its recovery of the MARS funds. Furthermore, the Transfer was made in the ordinary course of business between CBR and Epic as one of the recurring monthly payments under the terms of. Accordingly, and as more fully explained below, this Court should deny the Trustee's Motion for Summary Judgment and instead grant summary judgment in favor of CBR.

## II.  STATEMENT OF UNCONTESTED MATERIAL FACTS

1.  From June 2018 to September 2018, CBR performed certain transportation services upon the request of Ranger Offshore Inc., which were evidenced by invoices sent to Ranger Offshore. Declaration of Michael Peterson, (the "Declaration"), attached hereto as Exhibit 1 and

incorporated herein by reference, ¶ 4. At the completion of said services CBR was owed $619,819.07 for the work performed. *Id.* at ¶ 5.

2. On or about Aug 9, 2018, Epic Companies, LLC, and/or certain of its affiliates, purportedly acquired either the equity of Ranger Offshore or substantially all of its assets. *Id.* at ¶ 6.

3. As of Jan 30, 2019, CBR had not received payment for the amounts due as stated in the invoices, and therefore initiated an action for garnishment in federal district court against a third party, Modern American Recycling Service, Inc. ("MARS"), which was an action in Admiralty, invoking Rule B of the Admiralty Rules. *Id.* at ¶ 7.

4. On or about February 4, 2019, CBR obtained and perfected a Rule B attachment of amounts that were due to the Debtor from MARS. *Id.* at ¶ 8.

5. The order entered by the court, namely, the U.S. District Court for the Northern District of Alabama, which is attached to the Declaration as Exhibit "A", has been retained as a business record of CBR, evidencing the judicial lien that CBR had against the Debtor's interest in payment from MARS. *Id.* at ¶ 9.

6. Subsequent to the entry of the above-mentioned Order, MARS filed an Interpleader action in the Eastern District of Louisiana seeking to deposit funds in the registry of the Court, in the total amount of $632,608.90, acknowledging that such claims were subject to the claims made by CBR. *Id.* at ¶ 10.

7. Subsequent to the Rule B action and the Interpleader, the Debtor proposed a resolution of the maritime lien and judicial lien that CBR held, which was eventually memorialized in a settlement agreement dated May 6, 2019. *Id.* at ¶ 11.

8. The agreement required that CBR would release its Rule B action and associated

judicial lien in exchange for a series of payments; and further required that as a consequence of the payments, when complete, CBR would assign its claim against Ranger to the Debtor, Epic Companies, LLC. *Id.* at ¶ 12.

9. The agreement further required that CBR cooperate with the settlement, meaning that it would make no further claim in the Interpleader action. *Id.* at ¶ 13.

10. On May 7, 2019, CBR dismissed the action against MARS with prejudice. *Id.* at ¶ 15.

11. In accordance with the agreement, CBR took no further action against MARS or the Interpleaded funds subsequent to May 7, 2019. *Id.* at ¶ 16.

12. On May 17, 2019, Epic made the first payment as required under the settlement agreement. *Id.* at ¶ 17.

13. On June 21, 2019 Epic made the second payment as required under the settlement agreement, and the payment was made according to the ordinary and customary process by which the first, pre-preference-period payment was made. *Id.* at ¶ 18.

14. With and in exchange for each of the above payments, Epic intended to obtain an assignment from CBR of its rights against Ranger Offshore, to enable Epic to ultimately collect upon the funds owed by MARS to Ranger Offshore. CBR likewise intended to transfer such rights to Epic in exchange for the payments. *Id.* at ¶¶ 19, 20.

15. Epic also required in Section 3.5 of the Settlement Agreement that CBR "cooperate" with Epic and Ranger in connection with the interpleader suit on and after the date of the settlement agreement.

16. Specifically, subsequent to the June 21, 2019 payment, CBR agreed to be dismissed from the interpleader action. On September 9, 2019, MARS filed an Ex Parte Motion to Dismiss

with Consent to dismiss CBR from the interpleader action without prejudice.

17. As a result of CBR's consent to the dismissal, CBR was in fact dismissed from the interpleader action.

18. CBR's dismissal from the interpleader action enabled the Debtor to ultimately collect the interpleaded funds, in the amount of $593,807.90. *Id.* at ¶23; Ex. 2 (Consent Judgment).

### III. LAW & ARGUMENT

#### A. The Trustee Cannot Prove the Elements for Avoidance under § 547 of the Bankruptcy Code Because of CBR's Judicial Lien.

19. In order to avoid the Transfer pursuant to § 547 of the Bankruptcy Code, the Trustee must prove that the Transfer (1) was of an interest of Epic in property, (2) was to or for the benefit of CBR, (3) was for or on account of an antecedent debt owed by Epic before the Transfer was made, (4) was made while Epic was insolvent, (5) was made on or within 90 days before the Petition Date, and (6) enabled CBR to receive more than it would have received in a hypothetical Chapter 7 case had the Transfer not been made. 11 U.S.C. § 547(b).

20. Here, CBR did not receive more than it would have received in a hypothetical Chapter 7 case because of the maritime lien and judicial lien it held against amounts MARS owed the Debtor. " The test required by this element is often referred to as the 'greater percentage test' or the 'improvement in position' test." *Unsecured Creditors Comm. v. Cmty. Bank* (*In re Stinson Petroleum Co.*), 506 F. App'x 305, 309 (5th Cir.2013). A creditor who has secured an attachment is a lien creditor. *In re Coston*, 65 B.R. 224, 224 (Bankr. D.N.M. 1986) (held that "creditor with lien established by attachment had judicial lien, and not statutory lien for purposes of Bankruptcy Code."). And it is well settled that "[p]ayments to a fully secured creditor are not preferential because the creditor does not receive more than he would in a Chapter 7 liquidation." *In re Stinson Petrol. Co., Inc.*, 506 F. App'x 305, 309 (5th Cir. 2013). In fact, the Fifth Circuit has explicitly

5

held that "a fully secured creditor who receives a prepetition payment has, *as a matter of law*, not received a preferential transfer." *Id.* at 310 (emphasis added).

21. Here, if not for the Agreement wherein CBR voluntarily released the attachment, CBR would have retained the lien rights arising from the attachment, namely, the judicial lien securing the obligation satisfied by the Transfer.

22. Furthermore, although diminution of the Debtor's estate is not an explicit statutory requirement in § 547(b)(5), some courts, including the Fifth Circuit, have held that the requirement is implicit in the statutory language. 5 COLLIER ON BANKRUPTCY, ¶ 547.03[7] at 547–43 (16th ed.2013); *see also In re N.A. Flash Found. Inc.*, 298 F. App'x 355, 359 (5th Cir.2008) ("[T]he alleged preferential transfer must not diminish or deplete the debtor's estate."); *Garner v. Knoll, Inc.* (*In re Tusa–Expo–Holdings, Inc.*), 496 B.R. 388, 405 (Bankr.N.D.Tex.2013) ("There is no statutory requirement that there be a diminution of the bankruptcy estate. However, such a requirement is implicit in the language of the [Bankruptcy Act section 60(b), predecessor of Code section 547].") (citing *Palmer v. Radio Corp. of Am.*, 453 F.2d 1133, 1135 n. 3 (5th Cir.1971)).

23. The estate was not diminished by this payment. This payment enabled the Debtor, and, by extension, the Trustee, to retain its rights as to the interpleaded funds, and to ultimately recover those funds. In fact, any payments to CBR enriched the estate, insofar as the estate ultimately received almost ten times as much out of collection of the interpleaded funds that CBR had liened. *See* Ex. 2 (Consent Judgment).

### B. Affirmative Defenses

#### a. *The Transfer was intended to be a contemporaneous exchange for new value, and Epic received subsequent new value from CBR*

24. Section 547(a)(2) of the Bankruptcy Code defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously

6

transferred to such transferee." 11 U.S.C. § 547(a)(2). Courts have held that where a debtor makes payments in exchange for the release of a lien, "new value" is thereby created. *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling Inc.*, 837 F.2d 224 (5th Cir. 1988) (stating that the payment from a debtor to a beneficiary of a letter of credit may constitute a contemporaneous exchange for new value, when issuer of letter of credit consequently reduced its encumbrances on property of the debtor); *In re Gas-Mart USA, Inc.*, 613 B.R. 168, 172 (B.A.P. 8th Cir. 2020) ("The release of a lien can constitute new value.").

25. Here, with and in exchange for each of the payments under the Agreement, CBR not only released the attachment, but also executed an agreement contemplating that Epic and CBR would provide reciprocal value, including that CBR would assign to Epic its claim against Ranger and would cooperate with Epic in connection with recovery of the MARS funds. CBR intended to transfer such rights to Epic in exchange for the payments, just as Epic intended to obtain the assignment of CBR's claims against Ranger to enable Epic to ultimately collect upon the funds owed by MARS to Ranger. And, in cooperating with Epic and Ranger in the interpleader action, CBR agreed to be dismissed from that action, enabling Epic to collect the interpleaded funds in the amount of $593,807.90.

26. The timing of CBR's dismissal from the interpleader action is significant here. The dismissal of CBR from the interpleader action did not occur until *after* the challenged payment. Ex. 1, ¶ 21. This consent CBR gave to an agreed dismissal of its claim in the interpleader was value that ultimately enabled the estate, through the Trustee, to collect upon the interpleaded funds.

> b. ***The Transfer was made in the ordinary course of business or financial affairs of Epic and CBR because the Transfer was one of the recurring monthly payments made in accordance with the contract terms***

27. "The ordinary course defense 'is intended to protect recurring, customary credit

transactions' that are incurred and paid in the preference period for the purpose of encouraging the continuation of business by suppliers with a person seeking to avoid a bankruptcy filing." *In re Slamdunk Enters., Inc.,* 2021 WL 389081, at *20 (Bankr. E.D. Tex. Jan. 29, 2021). The leading treatise on bankruptcy law notes that payments made pursuant to a settlement agreement should not be categorically excluded from ordinary course analysis, but rather "such a determination is a question of fact that depends on the nature of the industry practice in each particular case." 5 COLLIER ON BANKRUPTCY ¶ 547.04[3] (Richard Levin & Henry J. Sommer eds., 16th ed.). "There is no 'precise legal test' for whether payments are in the ordinary course of business." *Gasmark Ltd. Liquidating Tr. v. Louis Dreyfus Nat. Gas Corp.*, 158 F.3d 312, 317 (5th Cir. 1998) (quoting *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir.1991). "Rather, "the analysis focuses on the time within which the debtor ordinarily paid the creditor[ ] ... and whether the timing of the payments during the 90–day period reflected 'some consistency' with that practice." *Id.*

28. The timing of the Transfer and the manner in which it was paid are consistent both with the schedule set forth in the Agreement and prior payment under the agreement. The Agreement, attached to the Declaration as Exhibit A, states that "beginning on May 17, 2019, Epic shall make five (5) monthly payments of $76,284.57 each to Central Boat . . . ." On May 17, 2019 Epic made the first payment on the date provided for under the Settlement Agreement. Exhibit 1, ¶ 17. On June 21, 2019 Epic made the second payment as required under the settlement agreement, and the payment was made according to the ordinary and customary process by which the first, pre-preference-period payment was made.[2]

29. Furthermore, both the Agreement and the regular payments made in connection with it, encouraged the business of Epic, because Epic was able to get CBR to release its claim

---

[2] *See* Exhibit 1 at ¶18.

against Epic by paying certain amounts to CBR over a set period of time.

### c. The Trustee cannot avoid the Transfer because the Transfer prevented the fixing of a statutory lien that is not avoidable

30. Section 547(c)(6) provides that a trustee may not avoid a transfer that "is the fixing of a statutory lien that is not avoidable under section 545 of this title." 11 U.S.C. § 547(c)(6). "Although the language of § 547(c)(6) arguably applies only to the *fixing* of a lien, the legislative history reflects Congress' intent that § (c)(6) also exempt from the trustee's avoiding power 'transfers in satisfaction of such liens.'" *Cimmaron Oil Co., v. Cameron Consultants, Inc.*, 71 B.R. 1005, 1010 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5874; H.R.Rep. No. 595, 95th Cong., 1st Sess. 374, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6330). Thus, courts "construe[ ] Congress' intent to include, in addition, transfers that preclude imposition of such liens." *Id.* (citing *In re White*, 64 B.R. 843, 851 (Bankr.E.D.Tenn.1986)).

31. Here, the Trustee argues that this affirmative defense does not apply because Epic does not own the vessels secured by the liens. However, on or about Aug 9, 2018, Epic and/or certain of its affiliates purportedly acquired either the equity of Ranger or substantially all of its assets. Additionally, the transfers made to CBR by Epic precluded the imposition of the judicial lien. Therefore, the transfer is not avoidable.

### IV. CONCLUSION

32. For the foregoing reasons, CBR respectfully requests that this Court enter a judgment denying the Trustee's Motion for Summary Judgment and instead enter summary judgment in favor of CBR with regard to 11 U.S.C. § 547(b)(5), § 547(c)(1) (contemporaneous exchange for new value), and § 547(c)(2) (transfer in the ordinary course of business), and dismissing the Trustee's claims.

Respectfully submitted,

_____*/s/ Joseph P. Briggett*_____
JOSEPH P. BRIGGETT (*pro hac vice*)
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA  70140
Tel: (504) 568-1990
Fax: (504) 310-9195
E-mail:  jbriggett@lawla.com;

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served upon the parties listed below by facsimile, certified mail, return receipt requested, first class U.S. mail, electronic mail by the clerk of the court, and/or by messenger on the 11th day of April 2023.

____*/s/ Joseph P. Briggett*_____
Joseph P. Briggett