**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **EPIC COMPANIES, LLC,** | § | **Case No. 19-34752 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |
| **JEFFREY T. VARSALONE,** | § | |
| **LIQUIDATING TRUSTEE,** | § | |
| Plaintiff. | § | |
| | § | **Adv. No. 21-03893** |
| **vs.** | § | |
| | § | |
| **CENTRAL BOAT RENTALS, INC.,** | § | |
| Defendant. | § | |

**LIQUIDATING TRUSTEE'S OBJECTION TO CENTRAL BOAT RENTALS, INC.'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**To the Honorable David R. Jones,**
**United States Bankruptcy Judge:**

Jeffrey T. Varsalone, as the Liquidating Trustee for the Epic Companies, LLC Trust (the

"Liquidating Trustee"), by his undersigned counsel and pursuant to Rule 56 of the Federal Rules

of Civil Procedure (the "Federal Rules"), made applicable to this matter by Rule 7056 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the

United States Bankruptcy Court for the Southern District of Texas, hereby files this Reply in

Support of its Motion for Summary Judgment [Dkt. No. 12] (the "Motion")[2] and in opposition to

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The mailing address for the Debtors is: P.O. Box 79625, Houston, Texas 77279-9625.

[2]  Capitalized terms used but not defined in this Reply have the meanings ascribed to such terms in the Motion.

13920928

Defendant Central Boat Rentals, Inc.'s (the "Defendant," or "Central Boat") Cross Motion for Summary Judgment [Dkt. No. 15] (the "Response"). The Liquidating Trustee would respectfully show the Court as follows:

## I.    Introduction

1.    Central Boat challenges the Liquidating Trustee's ability to avoid the payment made by Epic Companies, LLC ("Epic") to Central Boat within 90 days of the Petition Date (the "Transfer") under section 547 of the Bankruptcy Code. Specifically, Central Boat argues that it did not receive more than it would have received in a hypothetical chapter 7 liquidation because it held a maritime lien and a judicial lien on amounts MARS owed Epic. However, Central Boat dismissed its claim against MARS with prejudice approximately six weeks prior to the Transfer, thus as of the date of the Transfer Central Boat did not have any claim against MARS.

2.    Central Boat's other affirmative defenses also fail as a matter of law because payments for the settlement of a prior lawsuit do not constitute new value and are not made or incurred in the ordinary course of business. Additionally, because Central Boat never had the right to assert a statutory lien against Epic's assets, it cannot assert that the Transfer prevented the fixing of a statutory lien. As a result, there are no genuine issues of material fact regarding the Liquidating Trustee's ability to avoid and recover the Transfer, and, as such, the Court should enter summary judgment in his favor.

## II.    Argument

### A.  Central Boat could not assert a Lien on Epic's property.

3.    Central Boat contests only one of the required elements for avoidance under section 547—that the Transfer enabled Central Boat to receive more than it would have received in a hypothetical chapter 7 case. Response, ¶ 20. Whether Central Boat is asserting that it had a lien on

amounts MARS owed Epic, or that it had liens on vessels allegedly owned by Epic, Central Boat's argument fails.

4.      First, Central Boat attempted to assert a maritime lien against five different vessels,[3] none of which were ever owned by Epic. In fact, the lien notices identify MARMAC, LLC as the owner of each of the vessels. *See* Claim No. 10092.  As evidenced in its Summary of Assets and Liabilities filed in the Chapter 11 case, Epic did not own these vessels. *See* Debtor's Schedule A/B Assets [ECF No. 128] at p. 4. In this case, Central Boat has no basis to assert that it had a maritime lien against Epic's estate because the uncontroverted facts show that these vessels were not owned by Epic. The liens are premised on the false assumption that Epic acquired Ranger's assets. However, Navarro Capital Partners, LLC acquired some of Ranger's assets in 2018. *See* Asset Purchase Agreement attached hereto as **Exhibit A**.[4] Epic owned an indirect equity interest in Navarro, but Epic did not acquire Ranger's assets, nor did it assume any liabilities that Ranger may have had to Central Boat. Moreover, as of the Petition Date, Epic no longer held any equity interest in Navarro. Epic was not a party to any service agreements between Ranger and Central Boat and any debts arising from those agreements were Ranger's debts. Therefore, as a matter of law, Central Boat could not have received more in a chapter 7 case because it would have been merely an unsecured creditor.

5.      Second, to the extent Central Boat ever held a valid lien against amounts MARS owed Epic, it released that lien when it dismissed its claims against MARS approximately six weeks prior to the Transfer. Therefore, as of the date of the Transfer Central Boat did not have a

---

[3] The MARMAC 26, the MARMAC 28, the MARMAC 32, the MARMAC 263, and the MARMAC 301.

[4] The Liquidating Trustee objects to paragraph 4 of Michael Patterson's Declaration as improper summary judgment evidence because the Asset Purchase Agreement is the best evidence of its terms. *Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat'l Ass'n*, 758 F.3d 592, 600 (5th Cir. 2014) ("[T]he best evidence of the parties' intent at the time of execution is the language of the contract itself.").

secured claim against Epic's property. As additional evidence that Central Boat would not have been a secured creditor, this Court reclassified Central Boat's claim, which was based on payments that Epic did not make pursuant to the same Settlement Agreement that is the subject of the avoidable transfer, as a general unsecured claim. *See Order Sustaining the Liquidating Trustee's Third Omnibus Objection to Certain Proofs of Claim* [Case No. 19-34752, Docket No. 1036].[5] The Court's determination that Central Boat did not have a secured claim based on unpaid amounts under the Settlement Agreement is now law of the case. *See Pritchard v. United States Tr. (In re England)*, 153 F.3d 232, 235 (5th Cir. 1998) ("Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions.") (citing *Alberti v. Klevenhagen*, 46 F.3d 1347, 1351 n.1 (5th Cir. 1995)); *see also Hardy Rawls Enters. L.L.C. v. Cage (In re Moye)*, 437 F. App'x 338, 342 (5th Cir. 2011) (applying the law of the case doctrine to the bankruptcy court's order regarding the secured status of a claim).

6.      "The relevant [547(b)(5)] inquiry focuses 'not on whether a creditor may have recovered all of the monies owed by the debtor *from any source whatsoever,*' but instead on whether the creditor would have recovered 100% of the debt from the debtor's estate." *Lowe v. Palmetco Inc. (In re N.A. Flash Found.)*, 298 Fed. Appx. 355, 359 (5th Cir. 2008) (quoting *Smith v. Creative Fin. Mgmt. (In re Virginia-Carolina Fin. Corp.)*, 954 F.2d 193, 199 (4th Cir. 1992) (emphasis in original); *see also Schmidt v. The Grand Ltd. (In re Black Elk Energy Offshore Operations, LLC)*, 605 B.R. 138, 150 (Bankr. S.D. Tex. 2019) ("if unsecured creditors receive less than a 100% distribution in a chapter 7, any additional payment received through an alleged

---

[5] It is also notable that the sole basis in support of Central Boat's secured filed claim was the liens on the MARMAC vessels that Epic never owned. Central Boat's claim did not make any reference to liens on funds owed by MARS to Epic, nor did it attach any documents supporting that argument.

transfer necessarily enables the creditor to receive more than it would in a liquidation if the payment was not made.").

7.       Central Boat would not have retained any lien rights against Epic's estate, therefore, the preferential payment to Central Boat enabled it to receive more than it would in a hypothetical chapter 7 case. Accordingly, Epic has established that there are no material issues of fact regarding its ability to avoid and recover the Transfer.

**B.  Epic did not receive subsequent new value.**

8.       Central Boat argues in its Response that Epic received new value because Central Boat "would assign to Epic its claim against Ranger and would cooperate with Epic in connection with recovery of the MARS funds." Response, ¶ 25. Central Boat never assigned Epic its claim against Ranger because Epic did not make all of the payments contemplated by the Settlement Agreement. *See* Settlement Agreement, ¶ 3.7. And as discussed above, even setting aside whether Central Boat had a valid claim against the MARS funds, Central Boat dismissed its claims against MARS with prejudice prior to the Transfer. It is irrelevant that the interpleader action was resolved after the Transfer because based on Central Boat's dismissal with prejudice, Epic could have obtained the interpleaded funds without any assistance from Central Boat as it no longer had any claim to the interpleaded funds as of the date of the Transfer.[6]

9.       Finally, the cases relied upon by Central Boat are distinguishable because the releasing parties in those cases were fully secured. *See In re GEM Const. Corp. of VA.*, No. 98-33110-T, 2000 WL 33321298, at *3 (Bankr. E.D. Va. Jan. 5, 2000) ("Whether payment made in

---

[6] To the extent that Central Boat relies on Michael Peterson's interpretation of Epic's intent in entering into the Settlement Agreement (Peterson Declaration, ¶ 19-20), the Liquidating Trustee objects that this is improper summary judgment evidence because Peterson is not qualified to provide evidence on Epic's intent. *Wallace v. Andeavor Corp.*, 916 F.3d 423, 428 (5th Cir. 2019) ("Lay opinion testimony is limited to that which is 'rationally based on the witness's perception' and 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'").

13920928

exchange for the release of a lien falls within the "new value" exception depends on whether there is a release of a potentially secured claim against debtor's property."). *Gulf Oil* is distinguishable because the Banks releasing the collateral were ***fully secured*** and the debtor's unsecured creditors were not impaired by the transaction. *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 229–30 (5th Cir. 1988) (emphasis added). The same is true for *Gas-Mart. In re Gas-Mart USA, Inc.*, 613 B.R. 168, 173 (B.A.P. 8th Cir. 2020) ("When, as in this case, a ***senior secured*** lender voluntarily releases its liens for less than full payment and a ***junior secured*** creditor releases its liens, the requirement for providing new value under § 547(c)(1) by the junior creditor is satisfied.") (emphasis added). Here, Central Boat is merely an unsecured creditor.

### C. Payments pursuant to a settlement agreement are not made in the ordinary course of business.

10.     Central Boat's reliance on *Collier* for the proposition that "payments made pursuant to a settlement agreement should not be categorically excluded from ordinary course analysis" is misplaced because the cases it references involved evidence establishing that it was the debtor's regular business practice to restructure defaulted debt. In those cases, the courts found that it was industry practice to restructure defaulted debt.[7] This case is distinguishable because there is no evidence that these types of agreements were part of Epic's regular business practice. *See Tolz v. Signal Capital Corp. (In re Mastercraft Graphics, Inc.)*, 157 B.R. 914, 920 (Bankr. S.D. Fla. 1993) (finding a litigation settlement payment was not in the ordinary course of business despite defendant's "attempts to characterize its settlement agreement with the debtor as a usual and customary restructuring agreement.").

---

[7] *See e.g. Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1074 (9th Cir. 2000) ("As part of its ordinary course of business, ARROW routinely enters into workout or debt restructuring agreements with creditors who are unable to meet their obligations."); *Lawson v. Ford Motor Co. (In re Roblin Indus.)*, 78 F.3d 30, 42 (2d Cir. 1996) ("Indeed, if the industry practice is to restructure defaulted debt, it would make little practical sense to require creditors to comply with any other standard in order to meet the requirement of § 547(c)(2)(C).").

11.     There is also a more fundamental issue here because Central Boat cannot establish that the *debt* was incurred by Epic in the ordinary course of its business under section 547(c)(2), which was not an issue in the cases cited by *Collier*. Epic did not own the vessels that Central Boat performed the services on and thus Central Boat did not have a claim against Epic prior to the entry of the Settlement Agreement. Central Boat has not included any evidence in the summary judgment record that it was the ordinary course of Epic's business to assume the liabilities of indirect subsidiaries (in this case, Navarro Capital) in a settlement agreement.

12.     Central Boat has also failed to point to any authority to support its claim that the Transfer made pursuant to the Settlement Agreement would fall under the ordinary course of business exception. Nor has it provided any argument to contradict the great weight of authority—including that of this Court—that has held otherwise. *See In re Quality Infusion Care, Inc.*, No. 10-36675, 2013 WL 6189948, at *12 (Bankr. S.D. Tex. Nov. 25, 2013) (granting summary judgment in favor of trustee because it was "undisputed that the Transfers were made pursuant to the Settlement Agreement."); *In re Valley Steel Prods. Co., Inc.*, 214 B.R. 202, 207 (E.D. Missouri 1997) ("The ordinary course of business exception is intended to protect recurring, customary trade transactions, not payments in settlement of contractual claims."); *In re Daikin Miami Overseas, Inc.*, 65 B.R. 396, 398 (S.D. Fla. 1986) ("[P]ayments made pursuant to a settlement agreement, which appear to be the result of an antecedent debt and prior dispute between the parties, are simply not in the ordinary course of business."); *In re Richardson*, 94 B.R. 56, 61 (Bankr. E.D. Pa. 1988) ("payments made pursuant to a judgment or settlement agreement are not made in the ordinary course of business"); *In re Red Way Cartage Co.*, 84 B.R. 459, 461 (Bankr. E.D. Mich. 1988) ("The fact that the parties negotiated an agreement for the payment of the antecedent debt and made payments pursuant to that agreement does not bring the payments within the 547(c)(2)

7

exception."); *Gull Air, Inc. v. Beech Acceptance Corp.* (*In re Gull Air, Inc.*), 82 B.R. 1, 3-4 (Bankr. D. Mass. 1988) (payments according to a settlement agreement were not in the ordinary course of business because a lawsuit is an unusual collection method).  Instead it simply cites to black letter law on the ordinary course of business defense and the improper legal conclusions of its declarant. Response, ⁋ 27.[8]

13.     Before the Settlement Agreement there was no existing contracts or business relationship between Epic and Central Boat. Central Boat does not, and cannot, dispute that the Transfer was made under the Settlement Agreement. Therefore, there is no dispute of material fact and as a matter of law, the Transfer was not made in the ordinary course of business or according to ordinary business terms.

**D.  Central Boat did not hold a statutory lien against the debtor's property.**

14.     Central Boat claims that this defense is applicable because Epic precluded the imposition of a *judicial* lien. Response, ¶ 31. However, the statute is clear that for this defense to apply, the Transfer must have prevented the fixing of a *statutory lien*. The Bankruptcy Code defines a "statutory lien" as a: "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, **but does not include security interest or judicial lien**…" 11 U.S.C. § 101(53); *see also  In re Horstmann*, 255 B.R. 564, 570 (Bankr. S.D. Iowa 2000) (holding that a lien that a creditor obtained in execution on creditor's judgment, was not "statutory lien," the fixing of which could not be avoided as preference). Central Boat does not claim to have any statutory liens to support this defense. And, even if its judicial

---

[8] The Liquidating Trustee objects to paragraph 18 of Michael Patterson's Declaration as improper summary judgment evidence because it includes a legal conclusion that "the payment was made according to the ordinary and customary process by which the first, pre-preference payment was made." *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011) ("It is also generally prohibited for a lay witness to interpret statutes and to give legal opinions.") (citing *United States v. Griffin*, 324 F.3d 330, 347-48 (5th Cir. 2003)).

13920928

lien could qualify under this defense, which it cannot, Epic did not prevent the fixing of a lien because Central Boat did not have any lien rights against Epic or its property at the time of the Transfer. The vessels it claims to have liens against were not owned by Epic. Epic never acquired or owned Ranger's assets. Central Boat fails to even allege that the encumbered vessels were in fact owned by Ranger.  The Transfer was not made to secure a debt that was secured by a statutory lien, therefore this defense is inapplicable as a matter of law.

**III.**    <u>**Prayer**</u>

15.     As established herein, Central Boat's Response fails to raise a fact issue regarding the straightforward facts and evidence presented by the Liquidating Trustee in support of his Motion. Accordingly, the Liquidating Trustee prays that the Court grant his Motion for Summary Judgment and all other just and proper relief to which he has shown himself entitled.

**Dated:  May 2, 2023**

**PORTER HEDGES LLP**

By:   _/s/ M. Shane Johnson_
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
Email: jhiggins@porterhedges.com
      eenglish@porterhedges.com
      sjohnson@porterhedges.com

**COUNSEL FOR THE PLAINTIFF**

13920928

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 2, 2023, a copy of the foregoing document was served through the

Electronic Case Filing System to all parties appearing in these cases, and by first class mail and

electronic transmission to the party identified below:

Joseph P. Briggett
Lugenbuhl, Wheaton, Peck Rankin & Hubbard
601 Poydras St., Ste. 2775
New Orleans, Louisiana 70130
jbriggett@lawla.com

*Counsel for Defendant Central Boat Rentals, Inc.*

/s/ *M. Shane Johnson*
M. Shane Johnson

10